UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Kevin J. Johnson,

                              Petitioner,                    **Hon. Hugh B. Scott**

                                                              07CV269S

                    v.
                                                              **Report
                                                              &
                                                              Recommendation**

Superintendent Graham,

                              Respondent.

_____

        The petitioner, Kevin J. Johnson ("Johnson"), seeks habeas corpus relief pursuant to 28

U.S.C. §2254.

                                    **Background**

        On September 2, 1997, the petitioner, Kevin J. Johnson ("Johnson") was convicted of

attempted murder in the second degree and assault in the first degree after a jury trial in New

York State Supreme Court, Monroe County.  The conviction arose from the January 1, 1997

incident in which the petitioner's wife, referred to as "Stacy," was repeatedly stabbed.  The

record reflects that on January 1, 1997, Stacy called 911 from the apartment she shared with

Johnson.  (R.  377, 628)[1] The call was disconnected within a few seconds and the 911 operator

could only discern a female crying on the phone (R.  380).  Police officers Michael Tymoch and

_____

        [1]  Unless otherwise designated, citations to "R." refer to the pages of the transcript of the
jury trial filed along with the state court records in this case.

                                       1

John Sanchez were dispatched to the residence. Officer Tymoch testified that when they arrived at the apartment he heard a women's voice screaming: "Help me. Help me." (R. 445-447). The officers knocked on the front door and announced their presence, but no one answered. Officer Tymoch testified that he looked through the window and saw a black man crouched behind the door they were knocking on. (R. 447). The officers ran to the side door; Officer Sanchez stood at the door, while Officer Tymoch entered the kitchen. Officer Tymoch heard a woman's voice coming from upstairs saying: "Help me. Help me. I'm going to die." (R. 451). Officer Tymoch testified that he then heard someone running up the basement stairs. Upon reaching the top of the stairs, the individual, who was later identified as the petitioner, was detained and cuffed by Sanchez. (R. 452-454). Officer Tymoch proceeded upstairs where he discovered Stacy lying on the floor in a pool of blood. (R. 456). The room was in disarray and the phone line was pulled out of the wall. (R. 466). As Stacy was being carried out of the house to an ambulance, Johnson (now sitting in the back seat of the police car) began yelling: "I hope she dies. I hope the bitch dies." (R. 404-405). The petitioner was told to be quiet, to which he responded: "Give me the death penalty, Mother fucker. Giver me the death penalty, Mother fucker." (R. 405).

Stacy testified before the grand jury and the petitioner was indicted. However, Stacy testified at the trial as a witness for Johnson. (R. 601). In her trial testimony, Stacy testified that from April 1995 forward, she had been having "problems" with Joyce Balkum, Johnson's former girlfriend. (R. 605-606). According to Stacy, Balkum would call her house and leave notes in her mailbox. Stacy stated that she was "mad" because Johnson would talk to Balkum. (R. 606). Stacy testified that in November of 1996, she began to have a sexual affair with an individual she knew only as "C-Dog." Johnson was unaware of this affair. (R. 606-607). At that time, she

believed that Johnson was having a relationship with Balkum. (R. 607). Stacy testified that she and Johnson went out on December 31, 1996. After "bouncing" from party to party (R. 611), she and Johnson went back to their apartment. (R. 612). Stacy testified that she and Johnson had not been getting along since they got married and that she wanted to be with C-Dog. (R. 612-613). According to Stacy, when Johnson "passed out," she called C-Dog. (R. 613). Stacy testified that C-Dog came over her house; asked to leave (permanently) with him; and then suggested that they kill Johnson. (R. 613-615). She stated that she and C-Dog got into an argument, and it "got physical." Stacy suggested her injuries were caused in her fight with C-Dog. (R. 615-617). Stacy testified that Johnson woke up and she called 911. (R. 615).

Upon cross-examination, the prosecution asked Stacy about the Grand Jury testimony she gave on January 22, 1997, five days after she got out of the hospital for treatment relating to the injuries she suffered on December 31, 1996. (R. 625). She stated that her Grand Jury testimony was "misleading" (R. 627). Approximately one month *after* giving her Grand Jury testimony, Stacy began to regularly visit Johnson in jail. Stacy testified that she visited Johnson in jail 36 times between February 21, 1997 and the date of the trial. The first 20 times she visited Johnson, she signed into the facility using her maiden name, Stacy Ward. The last 16 times she visited Johnson, she signed in using her married name, Stacy Johnson. (R. 626). Stacy testified that she did not recall telling Officer Tymoch on January 1, 1997 that Johnson was the person who stabbed her. (R. 630). She testified that she did not recall telling Investigator Thomas Keenan, while she was in the hospital on January 2, 1997, that Johnson got mad at her for talking to another person and stabbed her. (R. 631-632). Her trial testimony also included admitting that when she testified before the Grand Jury she stated that she called 911 soon after returning home

with Johnson on December 31, 1996 and that she did so because, referring to Johnson: "He looked crazy. He was getting really mad. I thought he was going to jump on me." (R. 648). She acknowledged that before the Grand Jury, her testimony was that Johnson, not C-Dog, had been involved in the altercation with her on December 31, 1996. (R. 648). She admitted that she never mentioned C-Dog to the Grand Jury or to any police officers or to the District Attorney's Office. (R. 648-649). At the trial, Stacy stated that she did not recall whether Johnson ran upstairs to the bedroom and attacked her as she was calling 911, but she did admit that when she testified before the Grand Jury as to who stabbed her, she was referring to Johnson. (R. 649-652).

The jury convicted Johnson on September 3, 1997. After litigation to settle the record, on September 29, 2000, the Appellate Division, Fourth Department affirmed the conviction. People v. Johnson, 275 A.D.2d 949 (4th Dept. 2000).[2] On December 14, 2000, the New York State Court of Appeals denied leave to appeal. People v. Johnson, 95 N.Y.2d 965 (2000).[3] On January 2, 2003, Johnson filed a *writ of error coram nobis* claiming that his initial appellate counsel was ineffective. The Fourth Department denied the petition on March 21, 2003. People v. Johnson, 303 A.D.2d 1059 (4th Dept. 2003). Leave to appeal to the New York Court of Appeals was

---

[2]  The Fourth Department vacated the petitioner's sentence and mandated resentencing so that the trial court could make necessary findings on the record to sentence Johnson as a persistent felony offender. Johnson, 275 A.D.2d at 951. The sentencing issues are not at issue in the instant petition.

[3]  Subsequent to the decision of the Fourth Department, Johnson's initial appellate counsel, Gary Hanlon, sought to be relieved from the case due to the fact that Johnson was suing him. See Appendix N attached to the State Court Record. On December 21, 2000, Peter Krystal, Esq. appeared as counsel to Johnson in connection with the re-sentencing proceedings. See Appendix P attached to the State Court Record. On May 2, 2002, Frederick Lester was appointed to represent Johnson. See Appendix V attached to the State Court Record.

denied on June 27, 2003. See Appendix Z attached to the State Court Record.[4]  On September

27, 2004, Johnson filed a motion pursuant to §440.30 of the New York State Criminal Procedure

Law ("CPL"), again raising the following issues: (1) that the indictment was deficient; (2) that he

had been erroneously adjudicated a persistent felony offender; (3) that the use of a prior

conviction was improperly upheld; and (4) that he had been afforded ineffective assistance of

counsel. See Appendix Z-16 attached to the State Court Record. The trial court denied the

motion on May 12, 2005. See Appendix Z-20 attached to the State Court Record. On June 14,

2005, he sought leave to appeal to the Fourth Department, claiming that he had been improperly

convicted on inconsistent grand jury theories; that his 1988 felony conviction had been

improperly used as a predicate at sentencing; and that he had been afforded ineffective assistance

of counsel. See Appendix Z-21 attached to the State Court Record. The Fourth Department

denied leave to appeal on See Appendix Z-26 attached to the State Court Record.  Leave to

appeal to the Court of Appeals was denied on September 29, 2006. See Appendix Z-27 attached

to the State Court Record.

The instant petition ensued. The petitioner asserts four grounds for habeas corpus relief:

(1) that his arrest was in violation of his due process rights; (2) that the indictment was defective;

(3) that his trial was fundamentally unfair; and (4) ineffective assistance of trial and appellate

---

[4]  On September 17, 2003, attorney Lester filed papers in Fourth Department claiming that the trial court abused its discretion by sentencing the plaintiff as a persistent felony offender. On March 19, 2004, the Fourth Department affirmed the re-sentencing.  People v. Johnson, 5 A.D.3d 1050 (4th Dept. 2004)(See Appendix Z-5 attached to the State Court Record.)  Leave to appeal to the Court of Appeals was denied on June 8, 2004. See Appendix Z-9 attached to the State Court Record.  The Fourth Department denied a request for re-argument on July 9, 2004. People v. Johnson, 9 A.D.3d. 920 (4th Sept. 2004)(See Appendix Z-13 attached to the State Court Record).  The Court of Appeals again denied leave to appeal on August 10, 2004. See Appendix Z-15 attached to the State Court Record.

counsel. (Docket No. 1 at pages 6-10).

**Exhaustion**

In the interest of comity and in keeping with the requirements of 28 U.S.C. §2254(b), federal courts will not consider a constitutional challenge that has not first been "fairly presented" to the state courts.  See Ayala v. Speckard, 89 F.3d 91 (2d Cir. 1996) (citing Picard v. Connor, 404 U.S. 270, 275 (1971)); Daye v. Attorney General of New York, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).  A state prisoner seeking federal habeas corpus review must first exhaust his available state remedies with respect to each of the issues raised in the federal habeas petition.  Rose v. Lundy, 455 U.S. 509 (1982).  To meet this requirement, the petitioner must have raised the question in a state court and put the state appellate court on notice that a federal constitutional claim was at issue.  See Grady v. Le Fevre, 846 F.2d 862, 864 (2d Cir. 1988); Petrucelli v. Coombe, 735 F.2d 684, 688-89 (2d Cir.1984).  A state court is deemed to have been put on notice of the federal constitutional nature of a claim if the petitioner: (1) relied on pertinent federal cases employing constitutional analysis; (2) relied on state cases applying constitutional analysis to similar factual patterns; (3) asserted his claim "in terms so particular as to call to mind a specific right protected by the Constitution[;]" or (4) alleged patterns well within the mainstream of constitutional litigation.  Daye, 696 F.2d at 194.

The respondent does not argue that the plaintiff has failed to exhaust his state court remedies with respect to the claims raised in the petition. To the extent any questions remain as to whether each of the petitioner's claims have been fully exhausted, a decision on the merits is appropriate under 28 U.S.C. § 2254(b)(2), which provides that "[a]n application for a writ of

habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  See also Mobley v. Senkowski, 2003 WL 22952846, *2 (E.D.N.Y. Nov. 12, 2003) (stating that under §2254 a district court may now, in its discretion, deny on the merits a habeas petition containing exhausted and unexhausted claims, referred to as a "mixed petition.")


**Standard of Review**

State court findings of historical facts, and inferences drawn from those facts, are entitled to a presumption of correctness.  Matusiak v. Kelley, 786 F.2d 536, 543 (2d Cir.) cert. denied, 479 U.S. 805 (1986); see also 28 U.S.C. § 2254(e)(1) (stating that "a determination of a factual issue made by a State court shall be presumed to be correct."). As amended by the Antiterrorism and Effective Death Penalty Act of 1996[5] ("AEDPA"), § 2254(d) of Title 28 provides that a habeas corpus petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of that claim:

> 1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.  The presumption of correctness attaches to findings both by state trial

---

[5]A ntiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214.

courts and by state appellate courts. <u>Smith v. Sullivan</u>, 1998 WL 156668 (W.D.N.Y. 1998) (Larimer, C.J.); <u>Nevius v. Sumner</u>, 852 F.2d 463, 469 (9th Cir. 1988), <u>cert denied</u>, 490 U.S. 1059 (1989).

In enacting AEDPA, Congress intended to heighten the deference given to state court determinations of law and fact. As noted in <u>Smith</u>, AEDPA has clearly raised the bar for habeas petitioners, placing on them the burden to show by clear and convincing evidence that the state court decision was defective in some way." <u>Smith</u>, 1998 WL 156669 at *3. AEDPA "requires federal courts 'to give greater deference to the determinations made by state courts than they were required to do under the previous law.'" <u>Ford v. Ahitow</u>, 104 F.3d 926, 936 (7th Cir. 1997) (quoting <u>Emerson v. Gramley</u>, 91 F.3d 898, 900 (7th Cir. 1996) <u>cert. denied</u>, 520 U.S. 1122 (1997)); see also <u>Houchin v. Zavaros</u>, 107 F.3d 1465, 1470 (10th Cir. 1997) (AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal conclusions.)

## DISCUSSION

**Statute of Limitations**

AEDPA imposes a one-year statute of limitations on the filing of habeas petitions in federal court. 28 U.S.C. § 2244(d)(1). Pursuant to that provision, the petitioner has one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" to file a petition in federal court. Id. This statute of limitations may be tolled when "a properly filed application for State post-conviction or other

collateral review with respect to the pertinent judgment or claim is pending", 28 U.S.C. § 2244(d)(2), but such filings do "not reset the date from which the one-year statute of limitations begins to run." <u>Smith v. McGinnis</u>, 208 F.3d 13, 17 (2d Cir.2000); see also <u>Scales v. N. Y. Division of Parole</u>, 396 F. Supp. 2d 423, 428 (S.D.N.Y. 2005); <u>Pettiford v. Graham,</u> 2009 WL 920342, 6 (S.D.N.Y.,2009).

In the instant case, the petitioner filed his initial notice of appeal on December 24, 1997. The Fourth Department affirmed the conviction, but vacated the sentence imposed, on September 29, 2000. See Appendix L attached to the State Court Record.   Leave to appeal to the Court of Appeals was denied on December 14, 2000. See Appendix O attached to the State Court Record. Johnson was resentenced on December 19, 2000.  See Appendix R attached to the State Court Record.   The petitioner filed a new notice of appeal on December 22, 2000. See Appendix T attached to the State Court Record.  The Fourth Department denied this appeal on March 19, 2004.  Leave to appeal to the Court of Appeals was denied June 8, 2004.  Johnson did not seek certiorari to the United States Supreme Court.

The respondent contends that the petition was not timely filed. The one-year limitations period starts to run when the state criminal judgment becomes final or the time period for seeking direct review expires, and is tolled during the pendency of a state collateral proceeding. 28 U.S.C. § 2244(d)(l)-(2).  Thus, as the respondent acknowledges (Docket No. 10 at page 10), the one-year limitation period started to run on June 8, 2004.   However, the record reflects that Johnson filed numerous collateral proceedings.[6]   In order to determine whether a

---

[6]  Johnson filed a motion for reargument before the Fourth Department on June 25, 2004. See Appendix Z-10 attached to the State Court Record.  This was denied by the Fourth Department on July 9, 2004.  See Appendix Z-13 attached to the State Court Record.  A similar

post-conviction motion tolls the statute of limitations established by AEDPA, it must be determined whether it is "properly filed" pursuant to 28 U.S.C. § 2244(d)(2). According to the Second Circuit, "properly filed" means "simply that an application for state post-conviction relief recognized as such under governing state procedures has been filed." <u>Bennet v. Artuz</u>, 199 F.3d 116, 123 (2d Cir.1999). The petitioner's June 25, 2004 motion for reargument was properly filed. The Court addressed this issue in <u>Lebron v. Sanders</u>, 2004 WL 369141 (S.D.N.Y.,2004):

> Motions for reargument before the [Appellate Division] are governed by N.Y. C.P.L. § 470.50(1) and N.Y. Comp.Codes R. & Regs., tit. 22, § 600.14(a). Because New York's procedural rules allow a motion for reargument, such a motion is 'properly filed,' regardless of the merits (or lack thereof) of such a motion...." <u>Gomez v. Duncan</u>, 2002 WL 1424584 at *3 (S.D.N.Y. July 1, 2002) (citing <u>Artuz v. Bennet</u>, 531 U.S. 4, 8-9, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000)) (footnotes omitted); see also <u>Rodriguez v. New York</u>, 2003 WL 289598 at *13 (S.D.N.Y. Feb.11, 2003) (tolling time period during which petitioner sought reargument of denial of motion for extension of time to file a notice of appeal).

<u>Lebron</u>, 2004 WL 369141 at *3. In the instant case, the Fourth Department did not reject the motion as improperly filed, but denied it after "due deliberation having been had thereon." Appendix Z-13 attached to the State Court Record (page 501). Similarly, the Court of Appeals noted that "a timely application" was made, but that "there is no question of law presented which

---

motion for reargument filed with the Court of Appeals on July 2, 2004 (See Appendix Z-11 attached to the State Court Record), was denied on August 10, 2004. See Appendix Z-15 attached to the State Court Record. Johnson filed a §440 motion on September 27, 2004 in New York State Supreme Court, Monroe County(See Appendix Z-16 attached to the State Court Record); which was denied May 12, 2005. See Appendix Z-20 attached to the State Court Record. The petitioner filed an appeal to the Fourth Department with respect to the denial of the §440 motion on June 14, 2005. See Appendix Z-21 attached to the State Court Record. That was denied by the Fourth Department on July 26, 2006. See Appendix Z-26 attached to the State Court Record. Johnson's August 26, 2006 application for leave to appeal that denial to the Court of Appeals was, in turn, denied on September 26, 2006.

ought to be reviewed." Appendix Z-15 attached to the State Court Record (page 507). Johnson's September 27, 2004 §440 motion was also properly filed. See Appendix Z-16 attached to the State Court Record. The New York State Supreme Court, Monroe County denied the §440 motion in a 5-page written decision on May 12, 2005. Appendix Z-20 attached to the State Court Record (page 557). The petitioner's appeal of this decision to the Fourth Department (Appendix Z-21 attached to the State Court Record), was again considered but denied on July 26, 2006 because there was no question of law or fact which ought to be reviewed by the Court." Appendix Z-26 attached to the State Court Record (page 636). Johnson's August 26, 2006 application for leave to further appeal to the Court of Appeals, however, was denied on September 26, 2006 because "the order sought to be appealed is not appealable under Criminal Procedure Law, section 450.90(1)." Appendix Z-27 attached to the State Court Record (page 637). Thus, Johnson's application to the Court of Appeals was not "properly filed" and did not operate to toll the one-year statute of limitations period.

It appears that only 64 days elapsed between June 8, 2004 (the date the limitations period began to run) and August 26, 2006 in which the petitioner did not have some properly filed collateral proceeding pending in the state court (17 days between June 8, 2004 denial of leave by the Court of Appeals and Johnson's June 25, 2004 request for reargument; 47 days between the August 10, 2004 denial of reargument by the Court of Appeals and the filing of Johnson's September 27, 2004 motion pursuant to §440 of the Criminal Procedure Law). The last of these properly filed collateral attacks was denied on August 26, 2006 – approximately 283 days prior to the April 5, 2007 filing of the instant petition. The un-tolled days between June 8, 2004 and the filing of the instant petition total 347 days. Thus, it appears that the instant petition was

timely filed.

**Due Process Claim Regarding Arrest**

The petitioner claims that his "arrest was in violation of due process" because the arresting officer "forged victim's statement and neglected to take finger prints from knife." (Docket No. 5 at page 6). To the extent that this claim is based upon an assertion of Fourth Amendment rights, it is precluded from federal habeas review. The Supreme Court has explicitly held that Fourth Amendment claims that have been litigated in state court are not cognizable on federal habeas review. Stone v. Powell, 428 U.S. 465 (1976); Torrance v. Girdich, 2009 WL 2180374, 6 (W.D.N.Y.,2009). The petitioner raised the claim that his arrest was in violation of his due process rights before the state court, which found that exigent circumstances (hearing Stacy's cries of "help me, help me") existed warranting the officers entry into Johnson's house. See Appendix L (at page 281) attached to the State Court Record. This determination was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court or an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Further, the petitioner has presented no basis whatsoever to find that the victim's statement was forged.

**Claim of Defective Indictment**

The petition contends that the indictment was defective because the prosecution withheld evidence of intoxication from the Grand Jury; the charge of attempted murder was inconsistent, and the victim was allegedly forced to make a false statement. These claims are not cognizable

in a habeas corpus proceeding in federal court. Petitioner's subsequent conviction by a jury cured any arguable defects in the indictment process "because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt." Montalvo v. Annetts, 2003 WL 22962504, at *17 (S.D.N.Y.  2003); United States v. Mechanik, 475 U.S. 66, 70 (1986) ("the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt."); Davis v. Mantello, 42 Fed. Appx. 488, 490-91 (2d Cir.2002) (summary order) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court."), cert. denied, 538 U.S. 986 (2003).

**Claim of Unfair Trial**

Johnson alleges that he was denied a fair trial because the trial court allowed an expert witness to give false testimony; allowed the prosecution to call recess and assign counsel to a witness; and failed to "dismiss inconsistent theories before jury instructions."  (Docket No. 5 at page 9).  Initially, it is noted that evidentiary rulings rarely serve as a sufficient basis upon which to grant habeas corpus relief. Crane v. Kentucky, 476 U.S. 683, 689 (1986) (noting the Supreme Court's "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts"); Idlett v. Andrews,  2005 WL 2464168, 1 (2d. Cir. 2005)(same). In order to show an evidentiary error deprived the petitioner of due process, the petitioner must show the error was so pervasive that it denied him a fundamentally fair trial. Collins v. Scully, 755 F.2d 16, 18 (2d Cir.1985) (citing United States v. Agurs, 427 U.S. 97, 108 (1976)).

In support of this claim, the petitioner asserts that Officer John Bannister, assigned to the Rochester Police Department Technicians' Unit (R. 512), testified that it was not possible to get finger prints off the knife handle, but later acknowledged that the knife was not checked for finger prints. (Docket No. 12 at page 2). At trial, Bannister testified that he had the knife analyzed "for blood evidence." (R. 524). He testified that he did not have the knife processed for fingerprints because "fingerprint powder will contaminate any type of blood evidence." (R. 525). Further, after testifying to his experience and training in taking fingerprints off of various surfaces (R. 528-530), Bannister stated that the plastic handle of the knife is not a good surface for getting fingerprints. (R. 530). Johnson has presented no basis upon which to conclude that this testimony was "false."

Johnson's claim that the Court assigned an attorney to a witness also fails to present a basis for finding that he was denied a fundamentally fair trial. It appears that counsel was assigned to Stacy during her trial testimony (presumably because her trial testimony appeared to differ greatly from the statements she made previously to the police and Grand Jury) (Docket No. 12 at page 2). The plaintiff has not demonstrated that the appointment of an attorney for Stacy materially affected her testimony or deprived him of a fundamentally fair trial.

Finally, the petitioner contends that he was denied a fair trial because inconsistent theories were presented to the jury. Johnson was charged with attempted murder (New York Penal Law ["N.Y.S.P.L. "] §110.00 and 125.25) (R. 755); assault in the first degree pursuant to N.Y.S.P.L. 120.10(1) (R. 760), and **_in the alternative_**, assault in the first degree under N.Y.S.P.L. §120.10(3) (R. 765). Assault under §120.10(1) requires a finding that the defendant, with _intent_ to cause serious physical, causes such injury. The assault charge pursuant to

14

§120.10(3) applies where the defendant demonstrated *depraved indifference* to human life. The New York State Court of Appeals has determined that in many instances it is impermissible to charge both intentional murder and depraved indifference murder. People v. Payne, 3 N.Y.3d 266, 271 (2004); People v. Gonzalez, 1 N.Y.3d 464, 467 (2004) (affirming reversal of depraved indifference conviction because "defendant was guilty of an intentional shooting or no other"). These holdings were based upon the Court of Appeals decision in People v. Gallagher, 69 N.Y.2d 525 (1987), in which the Court held: "[w]here a defendant is charged with a single homicide, in an indictment containing one count of intentional murder and one count of depraved mind murder, both counts may be submitted to the jury, but only in the alternative." Gallagher, 69 N.Y.2d at 528. This was the law at the time of the petitioner's conviction in 1997. The Second Circuit has held that where the jury that convicted the petitioner was properly instructed to consider the depraved indifference and intentional theories ***in the alternative***, and returned a guilty verdict only on one theory, there was no Gallagher error. Policano v. Herbert, 453 F.3d 79 (2d. Cir. 2006).[7] The jury in this case was properly instructed to consider the assault charge based upon depraved indifference only in the alternative. (R. 769). See Burgos-Santos v. Greene, 2009 WL 1916376, *8, n.3. (S.D.N.Y. 2009)(The record shows that the trial judge properly charged the jury with both theories in the alternative). Recently, the Second Circuit held that we hold that the Due Process Clause of the Fourteenth Amendment of the United States Constitution does not require the retroactive application of the new interpretation of N.Y. Penal

---

[7]   In 2002, in People v. Sanchez, 98 N.Y.2d 373, 378 (2002), the Court of Appeals held that, if the only rational view of the evidence is that a defendant acted, if at all, with specific intent to kill, it would be *procedural error* to submit both intentional and depraved indifference murder theories to the jury. The United States Supreme Court has not ruled that allowing both intentional and depraved murder charges go to the jury constitutes a due process violation.

Law § 125.25(2) on collateral review of petitioner's conviction.  Henry v. Ricks,  2009 WL 2424572 (2d. Cir. 2009). In any event, ultimately the question is whether the evidence adduced at trial was sufficient to support the conviction. Policano v. Herbert, 507 F.3d 111 (2d Cir. 2007). In this regard, a habeas corpus petitioner is entitled to habeas corpus relief only if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Policano, 507 F.3d. at 115-116 quoting Jackson v. Virginia, 443 U.S. 307, 324 (1979).  "[A] petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." Policano, 507 F.3d. at 116 quoting Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir.2000).

In the instant case, Johnson was convicted of assault in the first degree pursuant to §120.10(1).  Under that statute, "[a] person is guilty of assault in the first degree when ... [w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."   The record in this case is sufficient to sustain that conviction.  Based upon the testimony of the officers (including their own observations of Johnson upon arriving at the location, Johnson's statements to the officers and the excited utterances of Stacy), as well as the physical evidence and the nature and extent of the victim's wounds, a rational trier of fact could conclude that Johnson, with intent to cause serious injury to the victim, did cause such injuries while using a dangerous instrument.

The petitioner has not demonstrated that he was denied a fundamentally fair trial in this case.

**Ineffective Assistance of Counsel**

The petitioner contends that he was denied effective assistance of counsel by both his trial and appellate attorneys because "all of the assigned counsel have either withheld facts or documents and/or helped the prosecution by sabotaging all my efforts to get a fair review." (Docket No. 5 at page 10). To establish his claim for constitutionally ineffective counsel, petitioner must prove two elements: (1) "the attorney's performance fell below an objective standard of reasonableness" and (2) "the outcome of his case would have been different had the attorney performed adequately." U.S. v. Perez, 129 F.3d 255, 261 (2d Cir.1997) (internal citation omitted). The petitioner has a heavy burden in establishing the first element, as "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984). "The proper standard for attorney performance is that of reasonably effective assistance." Id. at 687. "The performance inquiry is contextual." Purdy v. U.S., 208 F.3d 41, 44 (2d Cir.2000). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-689. Review of attorney conduct must not be based on hindsight. Id. at 689. An attorney who forgoes other potentially successful strategies is not constitutionally ineffective on that ground and a court must presume that, "under the circumstances, the challenged action might be considered sound trial strategy." Id. After establishing "cause," petitioner must then establish that he was actually prejudiced by these errors. "[E]rror by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland,

466 U.S. at 691. "To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Knowles v. Mirzayance, --- U.S. ----, 129 S.Ct. 1411, 1422 (2009); Sanders v. U.S., 2009 WL 2242302, *3 (E.D.N.Y.,2009).

With respect to trial counsel, Johnson contends that his attorney failed to personally conduct an investigation of the crime scene, and that had he done so he would have discovered that "the phone wire that was found on petitioner was not a part of the phone" at Johnson's home; that counsel withheld impeachment evidence (but does not identify what evidence); that counsel failed to object when an attorney was assigned to Stacy during her testimony; that counsel failed to object when Stacy was asked if Johnson "asked her to lie during the recess"; that counsel withheld a witness statement that would have "showed that the rebuttal testimony given by Officer Keegan was false." (Docket No. 12 at pages 20-21).

Johnson's assertions are conclusory and unsupported by the record. For example, based upon the record in this case, it is not apparent that had trial counsel personally investigated the crime scene that counsel would have obtain evidence proving that the phone wire found on Johnson's person at the time of his arrest (which took place in his home) did not come from the phone in his home. The petitioner has not demonstrated that the appointment of counsel for Stacy materially impacted her testimony in any way. Further, when asked if Johnson had asked her to lie, Stacy testified "No. You shouldn't even say that about my dear husband." (R. 659). Inasmuch as Johnson has not demonstrated that he was prejudiced in this regard, the failure of trial counsel to object cannot be said to be professionally unreasonable. Finally, Johnson's

assertion that his trial counsel was ineffective because he "withheld impeachment evidence" relating to the testimony of Officer Keegan is also insufficient to warrant habeas corpus relief. Trial counsel had stated that he had contemplated calling a handwriting expert with respect to a statement allegedly signed by Stacy. Counsel stated that upon discussion with the prosecution, it was his understanding that the prosecution was "not going to be making reference to the signed statement or [going to ask] whether or not she signed a statement January 1st, 1997." (R. 600). Johnson's counsel acknowledged that Officer Keegan was going to be called as a rebuttal witness, but concluded that "as long as we don't get into signatures, it appears I will not need do call the handwriting expert." (R. 600). Officer Keegan was examined as to his discussion with Stacy in the hospital the day after the attack. (R. 667). In support of the instant claim, Johnson points to the cross-examination of Officer Keegan from page 671 (line 22) to page 673 (line 23). (Docket No. 12 at page 21). In this cross-examination, trial counsel was able to get Officer Keegan to acknowledge some factual issues not included in his report and that Stacy was medicated at the time of the interview. Although there is a reference to the fact that Officer Keegan obtained "a deposition" from Stacy, there was no examination regarding the content or execution of any such document. (R. 672-673). Thus, there was no need to produce a handwriting expert as to whether Stacy signed the document. Johnson has failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness or that but for the alleged deficiencies (individually or collectively) there was a reasonable probability that the outcome of his case would have been different.

With respect to appellate counsel, Johnson contends that counsel did not raise the fact that the police failed to "preserve" fingerprints and that he had a dispute with appellate counsel

regarding the settlement of the record on appeal.  (Docket No. 12 at page 22).  With respect to the failure to preserve fingerprints, Johnson appears to be alluding to the testimony of Officer Bannister and the failure to obtain fingerprints from the knife involved in the attack.  The record does not reflect that there was a failure to preserve the knife for testing. In any event, "[t]he mere failure to preserve evidence which could have been subjected to tests which might have exonerated the defendant does not constitute a due process violation." Paradis v. Arave, 954 F.2d 1483, 1488 (9th Cir.1992), *vacated and remanded on other grounds,* 113 S.Ct. 1837 (1993); Rivera v. State of Hawaii,  1994 WL 202450, *2 (9th Cir. 1994).  Further, Johnson has not established that, had the tests been performed, they would have been exculpatory.  The failure to raise this issue on appeal is insufficient to warrant habeas corpus relief.   Similarly, Johnson's dispute with appellate counsel regarding the record also fails to warrant habeas corpus relief. The petitioner contends that he discovered moving papers and testimony missing from the record, and that appellate counsel tried to convince him that the "paper should not be in the record." (Docket No. 12 at page 22).  He also contends that appellate counsel misled him as to whether the case was "held in abeyance pending the outcome of the settlement hearing." Johnson has not articulated  the content of the evidence that was allegedly missing from the appellate record. Further, Johnson has not demonstrated that but for the failure to include the missing material in the record, there would have been a different result to his appeal.  Thus, the petitioner has failed to demonstrate that his appellate counsel's performance fell below an objective standard of reasonableness or that but for the alleged deficiencies (individually or collectively) there was a reasonable probability that the outcome of his case would have been different.

The petitioner's claim for habeas corpus relief based upon ineffective assistance of both trial and appellate counsel should be denied.

## Conclusion

Based on the above, it is recommended that the petition for habeas corpus relief be denied in its entirety.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

So Ordered.

_____          /s/ Hugh B. Scott
                                            United States Magistrate Judge
                                            Western District of New York

Buffalo, New York
August 11, 2009